Martin, Judge,
delivered the opinion of the court:
*1076 This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner’s rejection of claims 20-23, the only remaining claims of appellant’s application Serial No. 452,323 filed August 26, 1954 for MOTION PICTURE PROJECTION APPARATUS.
Claims 20 and 21, representative of the appealed claims, read:
20. In a theatre installation provided with a projection 'booth adjacent the rear of the theatre and a panoramic screen adjacent the front of the theatre and. having a central portion and curved end portions, apparatus for projecting a composite image onto said screen derived from three separate films each containing one component of the composite image, said apparatus comprising a group of three projectors disposed in said booth, said projectors carrying the respective films and being symmetrically arranged with respect to said screen, the center projector casting an image component directly onto the central portion of said screen, and reflectors disposed cooperatively with respect to the side projectors to cast the image components therefrom along intersecting paths onto the respective end portions of said screen, whereby the optical distance between each of said end portions and the related side projector exceeds that between the central portion of the screen and the center projector, said side projectors having long focus lens systems producing a relatively great depth of focus, thereby avoiding image distortion on said curved side portions of said screen.
21. In a theatre installation provided with a projection booth adjacent the rear of the theatre and a panoramic screen adjacent the front of the theatre and having a center portion and curved end portions, apparatus for projecting a composite image on said screen derived from three separate films each containing one component of the composite image comprising a first projector oriented to east an image in a central path directly onto the center portion of said screen, second and third projectors disposed on either side of said first projector, the projectors all being disposed in said booth, and reflectors disposed in cooperative relation to said second and third projectors with respect to said curved end portions of the screen to cast image components thereon in intersecting paths, whereby the optical distance between each of said end portions and the associated projector exceeds that between said center portion and said first projector, said second and third projectors including long focus optical systems providing a relatively great depth of focus.
Claim 22 is specific to the “reflectors disposed adjacent the opposing sides of the theatre cooperatively with respect to said side projectors.” Claim 23 is specific to the “reflectors mounted adjacent the opposing sides of the booth cooperatively with respect to said side projectors.”
The references relied on by the examiner and the board are:
Proctor, 1,666,304, April 17,1928.
Waller et al., 2,280,206, April 21,1942.
ISociété (France), 385,423, March 16,1908.
Rousseau (France), 657,324, January 15,1929.
Appellant’s application relates to a projector-screen arrangement which employs three motion picture projectors. These projectors simultaneously project an image onto a horizontally-elongated screen which is spaced from the projectors so as to define a spectator area between the projectors and the screen. The screen has a central por *1077 tion which is substantially at a right angle to the spectator area, and end portions that are usually concave. The three projectors are provided with films taken simultaneously. Thus when the images projected on the screen are placed side by side, a panoramic view results. Appellant’s three motion picture projectors are grouped together in a projection booth at the rear of the theatre. The central projector is focused on the center of the screen while the two side projectors are directed at two reflecting mirrors which are placed either at the sides of the projection booth or at the sides of the theatre. The two reflecting mirrors cast the image components from the two side projectors along intersecting paths onto the respective end portions of the screen. Appellant also employs a long focus lens system[1] in each of the two side projectors. Appellant in his brief points out that “The long focus lens systems used in connection with the increased optical distance [made possible by the reflectors] provided a relatively great depth of focus[2] for the concave ends or wings of the screen. This eliminated distortion since, with the greater depth of focus, everything projected on the concave screen could be kept in focus.”
The Waller et al. patent discloses a motion picture theatre comprising in combination a projection screen having a substantially spherical surface covering substantially the entire vision of a spectator and four projectors arranged to project images against contiguous areas covering substantially the entire surface of the screen. This arrangement provides three dimensional visual effect.
The Proctor patent discloses an apparatus for projecting a relatively long section of ticker tape quotations, panoramic views, sport results etc., on a flat screen. The projecting apparatus consists of a central projector and two side projectors. The projectors are so arranged to produce an effect similar to one large projector. The central projector casts an image directly on the central portion of the screen while each of the side projectors direct an image upon a first mirror angularly disposed so as to further direct the image on a second movable mirror angularly disposed to the first mirror. The images from the side projectors are thereupon directed along intersecting paths so as to be cast on opposite end portions of the screen. This results in a projection of a continuous progression when a single tape is drawn through the three projectors. For example, stock quotations are *1078 simultaneously cast on a screen in such a way as to allow for relative comparison in respect to the quotations immediately preceding or following the quotation projected by the central projector.
The Rousseau patent describes a motion picture apparatus which projects a picture on a preferably curved screen. The patentee uses a multiple lens system in taking the picture on a single film and in projecting it. The picture'is projected simultaneously by a plurality of projector systems, each projector system projecting a different portion of the film. The central portion of the picture can be projected by a central projector system using an appropriate lens with the two side portions of the picture being projected by two side projector systems which employ reflecting prisms, lenses and mirrors. The pat-entee teaches that the lens in each of the three projector systems have the same focal length. The patentee’s motion picture apparatus permits close spacing between the projector systems and the screen.
The Société patent discloses a system of a central and two side projectors for projecting a composite image on a curved screen. The three projectors can be so oriented that the center projector projects directly on the center of the screen and the two side projectors, by means of reflectors, project images on the curved end portions of the screen.
In rejecting the appealed claims the examiner took the position that the utilization of a reflector system in the Waller et al. theatre arrangement in such a way that the projectors could be located close together and still obtain the same angularly crossed projection beams was obvious in view of the Rousseau or Proctor patents, both of which teach the use of projecting beams outwardly near the projectors and reflecting the beams in angularly crossed relation to opposite sides of the screen. The examiner additionally rejected the appealed claims over Rousseau in view of either Waller et al. or Société. His position is that the arrangement of the projector lenses of Rousseau with the axes of the side lenses pointed outwardly and the reflectors to direct the beams in crossed relationship is the equivalent of the arrangement of projectors recited in the appealed claims except for the use of separate films for separate projectors. The examiner however considered the use of separate film for the several parts of the picture to be projected as obvious in view of Waller et al. or Société both of which show that it is conventional to project a composite image from separate strips of film.
The board affirmed the examiner’s rejections of claims 20-23 over the prior art, particularly when using Waller et al. as the basic reference in view of Proctor. The board stated:
*1079 * * * Proctor would provide an obvious suggestion to One skilled in the art, of modifying Waller et al. by providing reflectors, disposed adjacent the opposing sides of the theatre or of the projection booth, which may be substantially as wide as the screen or theatre, and cooperative with the side projectors, thereby increasing the optical distance between the side panels and related projector.
It is evident that the principles of optics involved in appellant’s invention are well known to those skilled in this art as stated in appellant’s specification:
It is known in the science of optics that the amount by which the distance between the exit pupil of a lens and the plane occupied by the screen can be changed without causing the diameter of the “circle of confusion” to exceed an acceptable value characterizes the depth of focus of the lens. The “circle of confusion” is the term applied to the circular blurred image of a point-object formed by a lens at a position displaced from the focal point of the lens.
Thus, the fact that every point on the curved end portion of the screen does not lie precisely in the focal plane of the lens system is not material where the displaced points fall within the depth of focus of the system. In the event a lens of long focal length is utilized in a projector at an extended distance from the screen, the relatively great depth of focus of the optical system is such that the image on the curved screen surface will appear uniformly in focus without the need for special lens-correction expedients.
The question then arises whether appellant has invented a projection-screen arrangement wherein these principles of optics are applied in a useful, novel and unobvious manner. We believe insofar as the record shows appellant has achieved this goal.
We find nothing in the references per se or in a combination of them which teaches or suggests the basic concept of appellant’s invention which is to use mirrors to lengthen the optical distance for the two side projectors together with the use of long focus lens systems for the purpose of increasing the depth of focus. None of the references per se or in combination teach so using mirrors to lengthen the optical distance so as to permit the use of a long focus lens system which will provide a greater depth of focus. The use of this concept permits an arrangement which is both economical and expedient insofar as the projection booth and the seating arrangements are concerned, while at the same time, allowing satisfactory focusing to be obtained under almost all theatre conditions. It is obvious from the record that some theatres are so constructed that a combination such as disclosed by appellant would be a very economical solution of the problems involved in adjusting a theatre to the innovation of panoramic viewing. Waller et al. show three projectors[3] each directed to a different portion of the semi-circular screen but there is no teaching of the use of mirrors to secure long optical distance when that is found necessary to properly adapt the theatre for panoramic viewing. In fact, it *1080 appears that the Waller et ah, plan might he limited in use to a theatre constructed particularly for that arrangement.
Proctor teaches the use of three projectors together with the use of mirrors-but does not teach that the mirrors are used for the ultimate purpose of permitting the use of long focus lens systems with increased depth of focus.
Rousseau says that:
Standard motion picture projectors require for a wide screen a considerable distance between projector and screen since tbe lens permits projection only at a small angle. A possibility to increase this angle for producing a projection of larger surface in spite of the small distance from the projector may frequently be advantageous; this applies particularly to playhouses when a background of animated scenery is to be produced by motion picture projection; the scene is actually wide, and the distance between the backdrop and a projector, necessarily placed behind the curtain, so as to be hidden from the spectator, is much smaller than that which in customary movie theaters separates the projector from the screen.
Appellant’s concept and arrangement implementing it is nowhere found or suggested in this patent. We place the Société reference in this same category.
The solicitor calls our attention to three statements of the examiner which he says demonstrates the correctness of the examiner’s rejections and the board’s decision. We will examine these statements. First the solicitor states:
the examiner has correctly stated that “the claims make no reference to the relative focal length between center projector and side projectors.” This is indicated by the claim language itself, as well as by appellant’s failure to challenge that statement. Hence, a prior art teaching of three projectors, each projector having a lens of identical “long focal length” would satisfy the “long focus” limitation of the claims.
This observation does not contravene the fact that appellant has taught the art to use mirrors in order to permit use of long focus lens system. It should be remembered that appellant’s invention involves a combination of elements and we find the patentability resides in this combination, not in any one element of the invention.
Second, the solicitor states:
The examiner considered the matter of focal length of the projector lenses to be a matter of choice * * * and stated that “any skilled worker in the art would select a lens of sufficient focal length to give proper focus on the screen” * * *.
We are sure this is true but then comes the question which appellant has answered with this combination — if one wants to use a lens of “long focal length,” how is this accomplished where space is a problem ?
*1081 The third statement reads:
'The examiner further noted that “it is customary in theater projection to use comparatively long focal length lenses on the projector, so the use of long focal length lenses by applicant is considered only a conventional and customary expedient in theater projection” * * *.
Again we find no fault with the examiner’s statement but it does not meet the issue which has been presented to us, i.e., is the teaching of an arrangement which includes the use of “comparatively long focal length lenses” under certain restricted circumstances patentable ?
We must admit that claim 23, which places each reflector in the projection booth in close proximity to its related outside projector as in a modified form of the invention shown on one of the application drawings, rather minimizes the significance of appellant’s concept of the necessity of securing longer optical distance by the use of mirrors. We assume appellant achieved the desired depth of focus in the embodiment recited in claim 23 and yet he does it without extending the optical distance by any appreciable amount beyond that which would have occurred by directing the rays of the outside projectors ■directly to the screen without the use of mirrors. Nevertheless, appellant has taught the art the use of mirrors when needed in combination with the other elements. We therefore reverse the decision of the board.

 As we understand from tie application, a long focus lens system Is one that employs a lens of long focal length. Focal length Is defined In Funk & Wagnall’s New Standard Dictionary (1931) as “the distance from the optical center of a lens or mirror to the point where the rays converge.”

 Appellant in his application has defined “depth of focus” of the lens as the amount by which the distance between the exit pupil of a lens and the plane occupied by the screen can be changed without causing the diameter of the circle of confusion to exceed an acceptable value, “circle of confusion” being the term applied to the circular blurred image of a point-object formed by a lens at a position displaced from the focal point of the lens.

 The fourth projector shown for vertical viewing Is not significant to this discussion.